STATE OF NORTH CAROLINA v. WALTER D. JEFFRIES

No. 8215SC826

(Filed 5 July 1983)

**Criminal Law §§ 70, 74— transcript of recorded statement—authentication**

The authenticity of a typed transcript of defendant's tape-recorded statement was sufficiently established to permit the officer who took the statement to read it into evidence without testimony showing the condition of the recording device, the skill of the operator, and the custody of the tape where the officer testified on cross-examination that he had reviewed the transcript and that it coincided with the recording and contained everything which was said when the recording was made.

APPEAL by defendant from *McLelland, Judge.* Judgment entered 5 November 1981 in Superior Court, ALAMANCE County. Heard in the Court of Appeals 9 February 1983.

The defendant, tried for second degree murder, was convicted of voluntary manslaughter.

On June 27, 1981, the defendant was sitting on a bar stool in Jerry's Tavern in Burlington. Some days earlier, he had been involved in a fist fight with Walter David Clark, who thereafter told others that he was going to kill Jeffries and this message was relayed to defendant. Clark entered the tavern and approached defendant, who told Clark that he heard he had been looking for him. Clark replied that he had and pushed Jeffries off the stool onto the floor. Clark, who was not wearing shoes, stood over defendant, kicked him, and said, "I ought to cut your eyes out." After somebody pulled Clark away from him, defendant went outside and sat in his car parked in front of the tavern; he left the car door open and was sitting sideways with his feet on the curb. Clark left the bar, approached the defendant, an argument occurred, and shortly thereafter, the defendant shot Clark in the head with a pistol. The State's evidence indicated that defendant got his pistol immediately upon going to the car and shot Clark as he approached the vehicle unarmed, after words were exchanged between them. The defendant testified that he thought Clark was going to attack him with a knife, even though he had seen no knife and Clark was clad only in shorts. After the shooting, Jeffries drove away, went to a lake, and threw his pistol in it. Several hours later, he went to the police and made a statement to them about the shooting. The statement or interview was recorded.

*Attorney General Edmisten, by Assistant Attorney General Charles M. Hensey, for the State.*

*Raiford & Harviel, by R. Chase Raiford and Ernest J. Harviel, for defendant appellant.*

PHILLIPS, Judge.

None of the defendant's many assignments of error are meritorious, in our opinion, and only one requires more than passing comment. His earnest contention that the case against him should have been dismissed as a matter of law is based on only a partial view of the evidence, a goodly portion of which tends to show that defendant shot an unarmed man, then posing no threat to his life or well-being, through the head with a pistol. And each of his several exceptions to the judge's charge is based on only a small segment thereof, whereas, read as a whole, in context, as

our practice requires, it shows that the jury was fairly and correctly instructed as to the law of the case.

The defendant's most vigorous contention that prejudicial error was committed during the trial is based on the officer who took the defendant's recorded statement being permitted to read a typed transcript of it into evidence over his objection. The basis for the objection was that the authenticity of the recording and transcript had not been established as required by *State v. Lynch*, 279 N.C. 1, 181 S.E. 2d 561 (1971), where it was said:

> To lay a proper foundation for the admission of a defendant's recorded confession or incriminating statement, courts are in general agreement that the State must show to the trial court's satisfaction (1) that the recorded testimony was legally obtained and otherwise competent; (2) that the mechanical device was capable of recording testimony and that it was operating properly at the time the statement was recorded; (3) that the operator was competent and operated the machine properly; (4) the identity of the recorded voices; (5) the accuracy and authenticity of the recording; (6) that defendant's entire statement was recorded and no changes, additions or deletions have since been made; and (7) the custody and manner in which the recording has been preserved since it was made.

*Id.* at 17, 181 S.E. 2d at 571.

As this evidence was first presented the defendant's objection was well taken, since the attempted authentication then consisted only of the officer testifying that the typed transcript coincided with the recording. That, of course, did not authenticate the recording and through it the accuracy and completeness of the defendant's statement; it only established the accuracy of the typist who listened to the tape and transcribed what was on it. Thus, as things then stood, the evidence was clearly inadmissible and should have been rejected.

But later, while being cross-examined, the officer testified:

> To my knowledge there was no part of the transcript which I read into evidence yesterday that was left out or any part that was not recorded. I reviewed it after I received it

back from the typist, or word processing, *and from my memory, it was there in its entirety.* [Emphasis supplied.]

This testimony cured the defect and rendered the transcription admissible; not because it showed that all the conditions enumerated in *Lynch* had been met, but because it showed that complying with them was unnecessary. *State v. Poole*, 44 N.C. App. 242, 261 S.E. 2d 10 (1979), *disc. rev. denied*, 299 N.C. 739, 267 S.E. 2d 667 (1980); *State v. Davis and State v. Fish*, 284 N.C. 701, 202 S.E. 2d 770, *cert. denied*, 419 U.S. 857, 95 S.Ct. 104, 42 L.Ed. 2d 91 (1974); *State v. Fox*, 277 N.C. 1, 175 S.E. 2d 561 (1970).

Complying with the steps required by *Lynch* is necessary and makes sense when a tape operator or auditor, remote from the scene, with no personal knowledge of what was said or by whom, is undertaking to authenticate a recording or transcript. But since the witness here was the one that asked the questions and listened to the answers in a face to face interview with the defendant and was able to say, from his own personal knowledge, not only that the transcript coincided with the recording, but that it contained everything that was said during that transaction, requiring testimony as to the skill of the operator, the condition of the machine, and of the tape's safekeeping would, as one of the profession's most respected scholars observed, be a pointless superfluity and "defy common sense." 2 Brandis, North Carolina Evidence § 195, at p. 122 (2d rev. ed. 1982).

In the defendant's trial, therefore, no prejudicial error is found.

No error.

Judges WEBB and BECTON concur.